IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WEBB,<br><br>    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO ET. AL.,<br><br>    Defendants.<br>_____/ | No. C 11-00472 CRB<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff has brought various section 1983 and state law claims against the City of San Francisco, San Francisco District Attorney and several Assistant District Attorneys, and two San Francisco police officers, in two related cases. Plaintiff's claims arise out his arrest for assaulting a police officer and resisting arrest. In this case directed at the prosecutors, Plaintiff's main claims are that he was unlawfully arrested, prosecuted, and held in custody. Attorney Defendants move for judgment on the pleadings as to all claims. The Court GRANTS the motion in its entirety.

**I.     FACTUAL BACKGROUND[1]**

On October 21, 2009, Officers Herbert and Dudy responded to a call regarding a trespasser on the premises at the Vincent Hotel, a single room occupancy hotel located at 459

---

[1] The factual background section is drawn in large part from declarations filed in the related case, No. 11-476, which Plaintiff brought against the arresting officers. Thus, the citations in this section refer to docket numbers in Case No. 11-476.

1  Turk Street in the Tenderloin district of San Francisco.  Declaration of Shane Herbert in
2  support of Mot. for Summary Judgment ("Herbert Decl.") (dkt. 66) ¶¶ 4, 11; Declaration of
3  Patrick Dudy in support of Mot. For Summary Judgment ("Dudy Decl.") (dkt. 66) ¶ 4.[2]
4  Plaintiff states, and the Officers do not appear to contest, that the original call regarding a
5  trespasser did not involve Plaintiff.  Opp'n at 1-2.  When Defendants arrived at the Vincent
6  Hotel, they met an individual named Maria Maya in the hotel lobby.  Herbert Decl. ¶ 4; Dudy
7  Decl. ¶ 4.  It does not appear that Ms. Maya was involved in the original call that brought the
8  officers to the hotel.  Defendants had previously been called to the Vincent Hotel two weeks
9  earlier, on October 14, 2009.  Herbert Decl. ¶¶ 2-3; Dudy Decl. ¶¶ 2-3.  On October 14, Ms.
10 Maya reported to the Officers that Plaintiff Webb had threatened her and physically assaulted
11 her.  Id.  On that occasion, Officers Herbert and Dudy were unable to locate Plaintiff on the
12 premises to question him about this alleged incident.  Id.  At that time, Officer Herbert
13 advised Ms. Maya to obtain a civil restraining order against Plaintiff.  Id.  Officer Herbert
14 completed a police report documenting the incident.  Id.

15      When Ms. Maya intercepted the Officers on October 21, 2009, she stated that she had
16 obtained the restraining order against Plaintiff, and that Plaintiff had again threatened her and
17 violated that restraining order.  Herbert Decl. ¶ 4; Dudy Decl. ¶ 4.  She stated that Plaintiff
18 was upstairs.  Id.  Plaintiff was also a resident at the Vincent Hotel.  Ms. Maya presented
19 Defendants with court papers regarding the restraining order against Plaintiff.  Herbert Decl.
20 ¶¶ 4, 11; Dudy Decl. ¶¶ 4, 9.  Also included in the papers provided by Ms. Maya was a
21 restraining order against another individual named Mark Sapp.  Id.; Herbert Decl. Ex. B
22 (copies of the restraining order papers).  These papers included an actual restraining order,
23 rather than an application, as the papers state at the bottom "This is a Court Order."  Herbert
24 Decl. Ex. B.

25      Plaintiff states in his declaration that Officers had fifteen minutes to conduct an
26 investigation into the restraining order, which he alleges was incomplete, and that Ms. Maya

---

[2]  The Herbert and Dudy declarations actually state the date as October, 21, 2011.  See, e.g., Herbert Decl. ¶ 4.  As there is not a dispute as to when the events at issue took place, I recommend the Court disregard this likely inadvertent error.

2

did have any "recognized injuries or bruises" when the Officers talked with her. Declaration of Anthony Webb in support of Opp'n to Mot. for Summary Judgment ("Webb Decl.") (dkt. 90) ¶ 25.

As Officer Herbert was speaking to Ms. Maya and the hotel front desk person and reviewing the papers provided by Ms. Maya, Plaintiff began walking down the stairs and into the hotel lobby. Herbert Decl. ¶ 5. Officer Dudy had stepped outside onto the street to handle another matter. Herbert Decl. ¶ 5; Dudy Decl. ¶ 5. Ms. Maya identified Plaintiff for Officer Herbert. Herbert Decl. ¶ 5. Plaintiff approached Officer Herbert and Ms. Maya. Id. Officer Herbert asked Plaintiff to put his hands over his head. Id. Plaintiff complied. Id. Officer Herbert then took a key out of Plaintiff's right hand. Id. Officer Herbert asked Plaintiff to bring his hands down and put them behind his back. Id. Plaintiff began complying, and Officer Herbert took Plaintiff's upper right arm and began turning Plaintiff to his left, towards the mailboxes on the wall. Id. Officer Herbert states he intended to detain Plaintiff, so that he could determine whether a valid restraining order had been violated and whether Plaintiff had assaulted Ms. Maya. Id. It does not appear that Officer Herbert explained his intention to Plaintiff.

Plaintiff then took a quick step to his left, spun to his right and punched Officer Herbert's lip with his left closed fist. Herbert Decl. ¶ 7. Plaintiff then moved rapidly towards the door to the street in an effort to flee Officer Herbert. Id. Officer Herbert caught Plaintiff by his sweatshirt in order to pull him back and prevent him from fleeing. Id. Plaintiff forcefully shoved Officer Herbert. Id. Officer Herbert attempted to perform a leg sweep takedown in order to get Plaintiff to the ground. Id. Officer Dudy overheard the ruckus and came back into the lobby. Herbert Decl. ¶ 7; Dudy Decl. ¶ 5.

Plaintiff then violently struggled with both officers for several seconds, continually resisting the officers' attempt to gain control over him. Id. The officers briefly got Plaintiff to the ground, but Plaintiff was able to get up again and threw Officer Dudy to the ground in the process. Id. The officers did not know whether Plaintiff was armed during this encounter, because they did not have time to do a pat-down search. Herbert Decl. ¶ 6. After

several seconds more of Plaintiff violently resisting the officers, Defendants were able to force Plaintiff onto his stomach on the ground. Herbert Decl. ¶ 8; Dudy Decl. ¶ 6.

Two backup officers arrived as Plaintiff was on his stomach near the door to the street. Id. The officers then attempted to restrain Plaintiff's hands and feet, so that he could be transported to the station. Id. One officer was on Plaintiff's back applying a knee to Plaintiff's upper torso in order to gain control of Plaintiff's arms to handcuff him. Id. Officer Dudy was near Plaintiff's legs, attempting to put Plaintiff's leg in a figure four position to control his legs and put him in leg restraints. Id. Officer Herbert and another officer were on their feet assisting. Id. Plaintiff continued to resist by refusing to allow the officers to take control of his arms and by kicking his legs. Id.

After he had been successfully restrained, Plaintiff was escorted out of the hotel lobby and into an SFPD transport vehicle. Herbert Decl. ¶ 9; Dudy Decl. ¶ 7. About five minutes passed from the time Officer Herbert first encountered Plaintiff and the officers escorted Plaintiff from the hotel. Herbert Decl., Ex. D (Video Surveillance from Vincent Hotel, Oct. 21. 2009).

A video recording of the incident was obtained from the Vincent Hotel's surveillance system. Herbert Decl. Ex. D. That video depicts Plaintiff's arrest as described above and in the Declarations of Officer Herbert and Officer Dudy. Id. The video also appears to show an officer using his legs to subdue Plaintiff when Plaintiff was on the ground. Herbert Decl. Ex. D. Both Officer Herbert and Officer Dudy were injured during the struggle. Officer Herbert had a cut on his lip and injured his right hand. Herbert Decl. ¶ 10. Officer Dudy injured his left knee and left hand. Dudy Decl. ¶ 8. At his deposition, Plaintiff refused to answer questions regarding whether he resisted the officers in any way, though he did testify that he did not hit either officer. Declaration of Bradley Russi in support of Mot. for Summary Judgment ("Russi Decl.") (dkt. 70) Ex. A (Webb Deposition Transcript) at 44:12-22; 47:24-48:12; 52:25-53:5; 85:16-24. Plaintiff states he also sustained injuries from the encounter.

4

1  Plaintiff claimed for the first time at his deposition that after he was escorted to the
2  SFPD transport van, two officers jumped in the van, closed the door, and beat him up for no
3  reason. Russi Decl. Ex. A at 52:3-12; 53:21-54:10. Plaintiff testified that the officers who
4  beat him up in the van hit him in such a way that the injuries were not visible. Id. at
5  50:23-25. Plaintiff did not identify Officers Herbert and Dudy as the individuals who
6  allegedly used force on him in the transport van. Id. at 52:3-12; 53:21-54:10. Officers
7  Herbert and Dudy state they did not use force on Plaintiff after he was restrained in the hotel
8  lobby and did not get in the transport van with Plaintiff. Herbert Decl. at ¶ 9; Dudy Decl. at
9  ¶ 7.

10  Officer Herbert completed a police report regarding the incident. Herbert Decl. ¶ 11;
11  Dudy Decl. ¶ 9. In that report, Officer Herbert recounted that Ms. Maya presented
12  Defendants a restraining order regarding Plaintiff. Id. Officer Herbert mistakenly noted in
13  the report the case number for the restraining order against the other individual, Mark Sapp
14  (Case No. 570008), as opposed to the restraining order Ms. Maya presented regarding
15  Plaintiff (Case No. 570007). Id. The restraining order regarding Plaintiff was booked into
16  evidence by Officer Dudy. Dudy Decl. at ¶ 9.

17  The San Francisco District Attorney charged Plaintiff with four counts: (1) felony
18  battery of a peace officer in violation of Section 243(c)(2) of the California Penal Code; (2)
19  felony resisting or obstructing a peace officer in violation of Section 69 of the Penal Code;
20  (3) misdemeanor battery of a peace officer in violation of Penal Code Section 243(b); and (4)
21  misdemeanor resisting or obstructing a peace officer in violation of Penal Code Section
22  148(a)(1). Defendants' Request for Judicial Notice ("RJN") (dkt. 70) Ex. A (Transcript of
23  Feb. 10, 2010 Preliminary Hearing) at 3:1-4.

24  The Judge at the Preliminary Hearing discharged Count 1 of the Complaint, finding
25  there was insufficient evidence to show the sort of injury that would bring the action within
26  the ambit of section 243(c)(2). Id. at 48:18-22. It also appears the charges were all
27  dismissed at one point, when the Assistant District Attorney failed to appear at the hearing,
28  though the Assistant District Attorney shortly re-filed the charges. Opp'n at 4-5. Plaintiff

then entered a plea of no contest to violating Section 69 of the Penal Code, and to a violation of his probation arising out of the arrest at issue in this case. RJN Ex. B (Transcript of Defendant's June 14, 2010 Plea Hearing).

The court found a factual basis for this plea based on the evidence presented by the district attorney at the preliminary hearing. RJN Ex. B at 6:11-18. The remaining charges against Plaintiff were dismissed as part of the plea deal. RJN Ex. B at 6:24-7:1. Plaintiff also admitted that this incident violated the terms of his probation, in violation of Section 11352(a) of the Health and Safety Code. RJN Ex. B at 9:8-10. The court also found a factual basis for this plea. RJN Ex. B at 9:11-12.

Plaintiff was in custody from the date of the arrest in October 2009 until December 2010. Plaintiff filed a lawsuit in this court on December 22, 2009. See Webb v. Herbert, et al., No. 09-6008. That suit arose out of the same factual scenario as the present case. RJN Ex. C (Complaint dated Jan. 20, 2010). On November 10, 2010, Judge White entered an order dismissing Plaintiff's claims. Webb v. Nelson, No. 09-6008, 2010 WL 4918736 (N.D. Cal. Nov. 10, 2010). The court found that Plaintiff's false arrest claim was barred by Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiff's charges or conviction had not been invalidated. Id. at *2. The court dismissed that claim "without prejudice to refiling once the claims accrue." The court dismissed Plaintiff's excessive force claim for failing to allege sufficient facts. Id.

Plaintiff now alleges he was "illegally arrested" and then "maliciously prosecuted with the evil intent to be illegally convicted." Am. Compl. at 3 (dkt. 1-1). Defendants are prosecutors for the County of San Francisco. Plaintiff alleges Defendants "did illegally detain Plaintiff in custody in filing false criminal charges in the name of the court, in that allege [sic] defendants did illegally detain plaintiff under false criminal charges . . . ." Am. Compl. Ex. B at 3. Plaintiff does not plead any facts regarding any action that any prosecutor defendant took or failed to take with respect to him aside from the filing and prosecution of criminal charges. Plaintiff also does not allege that he complied with the pre-suit requirements of the California Government Claims Act. Am. Compl. at 2.

6

1    Plaintiff filed the case in the San Francisco Superior Court on October 8, 2010.
2 Plaintiff's original complaint was not served on Defendants. Plaintiff then filed the
3 Amended Complaint on December 23, 2010. The Amended Complaint asserts a cause of
4 action for violations of the Civil Rights Act (presumably pursuant to 42 U.S.C. § 1983), and
5 causes of action under state law for malicious prosecution, abuse of process, false arrest,
6 false imprisonment, prosecutorial misconduct, and "fraudulent police report." Defendants
7 filed an answer in the Superior Court and a notice of removal in this Court on January 26,
8 2011. Dkt. 1. Defendants now move for judgment on the pleadings pursuant to Federal Rule
9 of Civil Procedure 12(c) on all claims. Dkt. 17.

## II.    LEGAL STANDARD

Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). Wood v. County of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995). "A dismissal on the pleadings for failure to state a claim is proper only if the movant clearly establishes that no material issue of fact remains to be resolved . . . ." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

## III.    DISCUSSION

Defendants, all San Francisco County prosecutors, move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(c). Given that Defendants are absolutely immune under federal and state law, and Plaintiff has failed to state a valid claim for any state law violation, the Court GRANTS the motion and dismisses all claims.

7

### A.     Absolute Immunity

Absolute prosecutorial immunity immunizes a prosecutor from any monetary liability pursuant to 42 U.S.C. section 1983 for actions taken in his role as a prosecutor. Prosecutorial immunity "is based upon the same purpose that underlies the immunity of judges and grand jurors acting within the scope of their duties: to protect the judicial process." See Milstein v. Cooley, 257 F.3d 1004, 1007 (9th Cir. 2001). "Specifically, absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits, (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court, (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit, and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability." Id.

Prosecutorial immunity is based on "the nature of the function performed, not the identity of the actor who performed it." Id. at 1008 (internal quotation marks and citation omitted). The official seeking immunity "bears the burden of showing that such immunity is justified for the function in question." Id. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Id. (internal quotation marks and citations omitted). On the other hand, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," the prosecutor is entitled to only qualified immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Thus, a prosecutor's decision to investigate or prosecute is protected by absolute immunity. See, e.g., Poppell v. City of San Diego, 149 F.3d 951, 962 (9th Cir. 1998) ("prosecutor's discretionary charging decisions" are "granted absolute immunity"). This is independent of the legality of the prosecutor's alleged actions. Buckley, 509 U.S. at 271 (the

8

inquiry focuses on the conduct for which immunity is claimed, not on the harm that conduct may have caused or the question of whether it was lawful").

The only allegations Plaintiff makes against Defendants with respect to his Section 1983 claim is that Defendants "illegally detain[ed] Plaintiff in custody in filing false criminal charges in the name of the court, in that the allege defendants did illegally detain plaintiff under false criminal charges set forth that Plaintiff committed a battery and or assaulted public entity officer Herbert and defendants illegally confined Plaintiff hereof in the County Jail of San Francisco . . . ." Am. Compl. Ex. B at 3.  Defendants have absolute immunity for their decision whether or not to file criminal charges against Plaintiff, regardless of the legality of such actions.[3]  Thus, the Court finds Defendants absolutely immune from liability under Section 1983.

### B.    California Government Code Section 821.6

California Government Code Section 821.6 states "A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Section 821.6 immunity applies if: (1) the alleged tortfeasor was a public employee, (3) plaintiff's injuries were caused by acts committed by public employees to institute or prosecute a judicial or administrative proceeding, and (3) the conduct was within the scope of the defendant's employment.  Amylou R. v. County of Riverside, 28 Cal. App. 4th 1205, 1212-13 (1994).  The immunity applies to prosecutors, police and any other public employee involved in instituting criminal investigations or proceedings.  Asgari v. City of Los Angeles, 15 Cal. 4th 744, 756-57 (1997).

Here Plaintiff alleges causes of action for malicious prosecution and abuse of process. Plaintiff does not provide a factual basis for these claims, relying on the bare allegations that

---

[3] The authority cited by Plaintiff does not change this analysis, as it does not stand for the proposition that Defendants are unprotected by the immunity applicable to a public prosecutor's conduct in instituting or prosecuting a criminal case.  See Clark v. Lutcher, 436 F. Supp. 1266, 1272 (M.D. Pa. 1977) (plaintiff sued prosecutors alleging they took acts in investigatory capacity to arrest and detain the plaintiff); Mother Goose Nursery Schools, Inc. v. Sendak, 502 F. Supp. 1319, 1322 (S.D. Ind. 1980) (state attorney sued for refusing to approve a public contract).

he was illegally detained under false criminal charges, maliciously prosecuted with evil intent, and Defendants "filed false criminal charges within the judicial process in the name of the court with the wrongful ulterior motive." See Am. Compl. Ex. B at 6, 9. These allegations relate only to Defendants' commencement of criminal proceedings against Plaintiff and their prosecution of Plaintiff. Such acts are within their scope of employment as prosecutors, and Defendants are immune under Section 821.6.

### C. False Arrest/False Imprisonment

Under California law, "false arrest" and "false imprisonment" are indistinguishable and refer to the same tort. See Collins v. City & County of San Francisco, 50 Cal. App. 3d 671, 673 (1975). "False imprisonment is the unlawful violation of the personal liberty of another." Cal. Pen. Code § 236. If an individual is detained pursuant to lawful process, that detention does not give rise to a claim for false arrest/imprisonment. Asgari, 15 Cal.4th at 757.

Plaintiff does not allege that Defendants arrested him; he alleges that San Francisco police officers arrested him. Am. Compl. at 3. Moreover, there is no allegation in the Amended Complaint that Defendants had any role in Plaintiff's arrest. Indeed, public prosecutors are not charged with the duties of arresting anyone nor are they responsible for jailing. See Cal. Govt. Code § 26500 *et seq*. Plaintiff does allege that Defendants "did illegally detain Plaintiff under false criminal charges" and such allegedly false criminal charges resulted in "false imprisonment." Am. Compl. Ex. B at ¶ 4-5. However, Plaintiff was detained after lawful process (i.e. an arraignment), and thus the allegations in the Amended Complaint cannot amount to a claim for false arrest or imprisonment against Defendants. Asgari, 15 Cal 4th at 757.

Because there is no factual basis for this claim alleged in the Amended Complaint, Plaintiff has failed to state a claim, and Court GRANTS the motion as to these claims.

### D. Prosecutorial Misconduct and Fraudulent Police Report

Plaintiff purports to allege claims for "prosecutorial misconduct" and "fraudulent police report." There is no cause of action for either claim recognized by California law.

10

Accordingly, such claims fail. To the extent that Plaintiff asserts his fraud claim arises under Civil Code Section 1709 and relates to a police report, Plaintiff has not pled that Defendants completed that police report and has not pled facts sufficient to state a Section 1709 claim. The required elements to state claim are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034, 1066-67 (C.D. Cal. 2005) (citations and quotation marks omitted). None of these elements are pled in the Amended Complaint. Accordingly, these claims fail, and the Court GRANTS the motion as to these claims as well. Since the state law claims fail on the merits, the Court need not address the argument that they are barred by Plaintiff's failure to comply with the California Government Claims Act.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for judgment on the pleadings.

**IT IS SO ORDERED.**

Dated: December 12, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

11